UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

IN RE:     ACTION TRANSIT, INC.          Case Number 07-27904-pp

                Debtor.                     Chapter 11

**ORDER PROVISIONALLY ALLOWING THE DEBTOR'S OFFER FOR ADEQUATE PROTECTION WITH CONDITIONAL USE OF COLLATERAL AND CONTINUING HEARING TO JANUARY 23, 2008**

The issue in this case is whether a contract between the debtor and one of its creditors entitled "Equipment Lease Agreement" constitutes a true lease (the requirements of which the debtor must follow until the debtor assumes the lease or rejects it), or constitutes a security agreement that requires the debtor to provide only adequate protection sufficient to protect against a decrease in the value of the secured collateral. The Court concluded at this hearing on the issue that the "Equipment Lease Agreement" was a security agreement, and provisionally granted the debtor authority to use the collateral in exchange for the proposed adequate protection payments. The Court's reasoning is set out in detail below.

### I.    FACTUAL BACKGROUND

On May 16, 2005, the debtor and Flash, Inc. ("Flash") entered into two contracts, one entitled "Equipment Lease Agreement" and the other entitled "Supplemental Lease Agreement." (Debtor's Ex. 1., hereinafter referred to as "the ELA") Flash drafted both contracts. These agreements related to the debtor's use of several pieces of

1

equipment–"rolling stock" (hereinafter referred to as "equipment")–to the debtor. (Ex. 1 ¶ 1.)[1]

On October 4, 2007 the debtor filed a Chapter 11 petition. Thereafter the debtor filed a document entitled "Offer of adequate protection pursuant to §361 of the Bankruptcy Code."[2] In support of the offer, the debtor argued that the ELA was not a true lease, but rather was a security agreement. The debtor argued that, because the ELA was a security agreement–and, accordingly, because Flash was a secured creditor rather than a lessor–the debtor needed to pay only adequate protection payments in an amount sufficient to protect Flash against a decrease in the value of the equipment.

Prior to filing the offer, the debtor obtained an appraisal of the equipment in the amount of $129,500. In its offer, the debtor agreed to provide Flash adequate protection payments of $2,018.41 per month, based on the appraised value of the equipment at $129,500, at eight percent interest amortized over seven years. The offer proposed that the debtor would begin making these adequate protection payments on November 1, 2007. The debtor argued that this offer constituted sufficient adequate protection of Flash's secured interest in the collateral.

Flash objected to the adequate protection offer. Flash challenged the accuracy of the debtor's appraisal of the equipment. Flash also argued that the ELA was a true

---

[1] The debtor also has been known as "Superior Paving." The "rolling stock" in question consists of a number of vehicles the debtor uses to conduct its business.

[2] The Court construed this document as a motion for authority to use the collateral in exchange for adequate protection payments, pursuant to 11 U.S.C. § 361.

2

lease agreement, not a security agreement, and hence that its terms were not subject to modification. Flash argued that the debtor was responsible not only for making past due payments, but also for making the remaining payments as required under the terms of the contract. Finally, Flash argued that the debtor owed additional money not provided for in the offer for adequate protection. It based this argument on the fact that, pursuant to a separate "Management Agreement" entered into by the parties on March 30, 2007, Flash held a priority claim, superior to that of the debtor's main secured creditor, in the amount of $40,000. (Mem. In Opp. at 3, Ex. B.)

## II. LEGAL ANALYSIS

### A. If the Contract In This Case Is An Executory Contract, the Code Requires the Debtor Either to Assume It In Full Or To Reject It.

Section 365(a) of the Bankruptcy Code governs the treatment of executory contracts, including unexpired lease agreements. Section 365(a) states that, "[e]xcept as provided in . . . subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor."³ In <u>In</u>

---

³ Pursuant to 11 U.S.C. § 1107(a), which governs the rights of a debtor-in-possession in the Chapter 11 scenario,

> a debtor in possession shall have all the rights, other than the right to compensation under section 330 . . . and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

Assuming or rejecting an unexpired lease is not one of the excepted duties listed in § 1106(a)(2)-(4); therefore, a Chapter 11 debtor-in-possession, such as the debtor in this case, may assume or reject any unexpired lease pursuant to §365(a).

3

re Cellnet Data Sys., Inc., 327 F.3d 242, 250 (3d Cir.2003), the Third Circuit held that "[u]nder the Bankruptcy Code, a trustee may elect to reject or assume its obligations under an executory contract. This election is an all-or-nothing proposition–either the whole contract is assumed or the entire contract is rejected." *See also* In re Larson, 128 B.R. 257, 262 (Bankr. D. N.D. 1990) ("A lessee, if assuming an unexpired lease, must adhere to the lease terms in all respects . . . .")

Until a debtor assumes or rejects an unexpired lease contract pursuant to § 365, the debtor must abide by the terms of the lease. As stated by the court in Larson,

> [a]lthough section 365(d)(3) providing for the timely performance of all obligations arising under an unexpired lease of nonresidential real property was meant to apply only in real property situations, it does illustrate an appropriate form of adequate protection for the continued use of leased property prior to assumption or rejection. It is appropriate the Debtors provide as adequate protection for the continued use of the leased equipment continuing payments to [the creditor] as lessor consistent with the terms of the respective leases.

Id. (footnote omitted). Therefore, until a debtor assumes or rejects an unexpired lease, the debtor must provide the lessor with payments consistent with the terms of the unexpired lease.

The effect of this requirement, then, is to prohibit a debtor from modifying the terms of an unexpired lease. Prior to assuming or rejecting the lease, the debtor must abide by the lease terms. If the debtor then decides to assume the lease, the debtor similarly must abide by the lease terms. The only option to abiding by the lease terms appears to be rejection.

4

B.  **If the Contract In This Case Is A Security Contract, the Code Allows the Debtor To Make Adequate Protection Payments Different From The Payments Required by the Contract, As Long As Those Payments Are Sufficient To Protect Against A Decrease In The Value of the Collateral.**

In contrast, a debtor may modify the terms of a security agreement by making an offer of adequate protection to the creditor. 11 U.S.C. § 363(e) states that

> on request of an entity that has an interest in property used, sold, or leased . . . the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest. This subsection also applies to property that is subject to any unexpired lease of personal property.

In In re George, 315 B.R. 624, 629 (Bankr. S.D. Ga.2004), the Georgia bankruptcy court observed that "[a]dequate protection payments are intended, first and foremost, to protect against, and compensate for, a decrease in the value of a creditor's collateral." (Internal quotations omitted). Similarly, the court in In re Bushee, 319 B.R. 542, 552 (Bankr. E.D. Tenn.2004) noted that "[a] secured creditor retains the right to adequate protection of its collateral, which means it is entitled to have the value of its collateral maintained at all times . . . ."

Therefore, if the agreement is a security agreement, the debtor may pay the creditor differently than the contract requires, as long as those payments serve to protect against a decrease in the creditor's collateral.

C.  **Wisconsin Law Controls Whether the Contract in this Case is a True Lease or a Security Agreement.**

The debtor argues that the ELA is not a lease at all, but is a security agreement. While the debtor does not state it explicitly, the implication of this argument is clear:

5

if the ELA is a security agreement, the provisions of § 365 do not apply. There is no executory contract for the debtor to assume or reject. Flash, as a secured creditor of the debtor, would be subject to the protections of § 363, rather than the more rigorous protections of § 365. Flash, of course, disagrees with this analysis. Flash argues that the ELA is a true lease, and therefore that the debtor "should be responsible for past due payments and obligated to make remaining payments under the terms of the lease." (Mem. in Opp. ¶2.)

The debtor and Flash agree that Wisconsin law controls whether the ELA is a true lease or a security agreement. Wisconsin Statute section 401.201(37)(b) states that

> [w]hether a transaction creates a lease or security interest is determined by the facts of each case. A transaction creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee and any of the following applies:
>
> 1. The original term of the lease is equal to or greater than the remaining economic life of the goods.
>
> 2. The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.
>
> 3. The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
>
> 4. The lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.

Wis. Stat. § 401.201(37)(b)(1)-(4).

The bankruptcy court for the Eastern District of Wisconsin has interpreted the predecessor to the current version of § 401.201(37)(b). In Michaels v. Ford Motor Credit Co., 156 B.R. 584, 592 (Bankr. E.D. Wis. 1993), Judge Shapiro considered whether an agreement entitled "Rental Agreement" constituted a true lease or a security agreement. The "Rental Agreement" which Judge Shapiro had to interpret was executed in May 1992, id. at 592, n.7; at that time, Wis. Stat. § 401.201(37) read, in pertinent part,

> Whether a lease is intended as security is to be determined by the facts of each case; however, a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Wis. Stat. Ann. § 401.201(37)(1991) (current version at Wis. Stat. § 401.201(37)(2003)).

Judge Shapiro began by noting that "[t]he Uniform Commercial Code ask[ed] a court to look at the substance of the underlying transaction, not the technical language of the agreement." Id. at 592 (citations omitted). Accordingly, he concluded that the facts that (1) the agreement was labeled a "Rental Agreement," and (2) the parties were referred to as "lessee" and "lessor" in the agreement, did not control the analysis of the issue, because "[t]he parties cannot change the legal effect of the agreement simply by giving it a name." Id. Rather, Judge Shapiro pointed out, "[t]he true intent of the parties must be determined from the language of the whole document rather than by

7

particular words or isolated phrases." Id.

Judge Shapiro then moved on to look at the specific provisions of the contract involved, and discovered that they were "sketchy" and "incomplete." Id. For example, he recounted that the agreement did not contain a termination date for the agreement, but did contain an option to purchase–albeit one failing to specify the purchase price. Id. at 592-93. This led him to conclude that

> [w]here a lessee may terminate a lease at any time without penalty or further obligation, this is an indication of a true lease. . . . On the other hand, where the lessee is contractually bound to pay rent over a set period of time at the conclusion of which the lessee automatically or for only a nominal consideration becomes the owner of the goods, the transaction is, in substance, a conditional sale.

Id. at 593 (citations omitted)

The agreement in Michaels did not lay out who was responsible for paying taxes in connection with the property, nor did it discuss who had the responsibility for providing insurance. Id. It did, however, make the debtor responsible for all operating and maintenance expenses, which suggested to Judge Shapiro "that [the debtor] acquired a property interest and that the document in question [was] a security agreement." Id.

In short, Judge Shapiro concluded that the agreement involved in Michaels was "woefully incomplete and ambiguous." Id. Because state law clearly established that an "ambiguous document" should "be construed against its drafter," id. (citations omitted), Judge Shapiro construed the document as a security agreement, against the drafter's urging that he construe it as a lease. Id.

8

Since the date that the <u>Michaels</u> agreement was executed, Wis. Stat. § 401.201(37)(1991) has been revised. The portion of the statute which deals with whether a transaction constitutes a lease or a security interest has been expanded to the point where it now has its own subsection. The statute retained the language indicating that the issue would need to be resolved on a case-by-case basis. But rather than merely noting the facts that an option to purchase did not, by itself, create a security interest, and that the fact that a particular kind of purchase option did create a security interest, the revised statute created a two-pronged test. The first prong asks whether "the consideration that the lessee is to pay . . . for the right to [possess and use] the goods is an obligation for the term of the lease not subject to termination by the lessee . . . ." Wis. Stat. § 401.201(37)(b)(2003). The second prong asks whether any of the following four other conditions exist–

* Is the original term of the lease equal to or greater than the remaining economic life of the goods?

* Is the lessee bound to renew the lease for the remaining economic life of the goods, or bound to become the owner?

* Is the lessee bound to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement? Or

* Does the lessee have "an option to become the owner of the goods for no additional consideration or nominal additional consideration upon

9

compliance with the lease agreement" (the specific purchase option which created a security interest under the predecessor statute)?

See id.

If the answer to the question is the first prong is "yes," and the answer to any of the four sub-questions in the second prong is "yes," then the transaction creates a security interest, rather than a lease.

### III. APPLICATION OF THE LEGAL ANALYSIS TO THE FACTS OF THIS CASE

Under the provisions of Wis. Stat. § 401.201(37) and the reasoning in Michaels, the Court concludes that the ELA involved in this case is not a true lease, but is a disguised security agreement.

#### A. The Fact that the ELA Declares that it is a Lease Is Not Determinative.

As Judge Shapiro reasoned in Michaels, this Court concludes that the facts that the contract at issue in this case (1) is entitled "Equipment Lease Agreement," (2) states that "[t]his agreement is one of leasing only," and (3) refers to the parties as "Lessor" and Lessee," are irrelevant to the present analysis. The parties may not change the legal effect of the document by giving it a different name, and this Court–like the Michaels court–looks to the language of the entire contract to determine whether it is a true lease or a security agreement. Id. at 592.

#### B. The Fact that the ELA Does Not Allow The Debtor To Terminate The Agreement Without Paying the Full Amount of the Lease Meets the First Prong of the Definition of a Security Interest.

Rather, the Court begins by looking at the language of the contract to determine

10

whether it meets the initial prong of Wis. Stat. § 401.201(37)(b)–that is, whether "the consideration that [the debtor] is to pay [Flash] for the right to possession and use of the [rolling stock] is an obligation for the term of the lease not subject to termination by [the debtor]." Wis. Stat. § 401.201(37)(b)(2003).

The consideration which the debtor is to pay Flash for the right to use the rolling stock is described in paragraph 5 of the ELA. The consideration consists of payments, as set forth in payment schedules.[4] The ELA requires the debtor to make those payments "on the 1st day of each month during the term of this lease." So–the consideration that the debtor is to pay Flash is an obligation for "the term of th[e] lease." Nothing in the ELA, however, indicates what "the term of this lease" is.

Is that obligation "subject to termination by the lessee"–that is, by the debtor? It does not appear to be. The ELA states that "[t]he Lease of any vehicle terminates at the expiration of its Lease term, or at any other time *after* the first Twenty-Four (24) months of such Lease term, *provided Lessee buys out the remainder of the Lease contract* and is not in default under this Lease." (Debtor's Ex. 1 at ¶ 11) (emphasis added.) It appears from this language that the "Lessee" is not entitled to terminate the agreement at any time. Rather, the "Lessee" may terminate the "lease" only (1) at the end of the lease term (whatever that term may be–the ELA does not define it) or (2) "after the first . . . (24) months of [the lease term], provided Lessee buys out the

---

[4] Paragraph 5 of the ELA says that the payment schedules are "attached" to the ELA. No such payment schedules were attached to the copies of the ELA that the parties filed with the Court.

11

Case 07-27904-pp   Doc 45   Filed 01/10/08   Page 11 of 19

remainder of the Lease contract . . . ." (Debtor's Ex. 1 at ¶ 11) Thus, the ELA provides either for the lease to terminate by expiring, or to terminate after two years if the debtor pays out the entire amount of the lease. Either way, the debtor has to pay out the total amount of the lease in order to extract itself from the transaction. The contract does not provide the debtor with a way to say, "I've decided I don't want to lease this rolling stock any more–I hereby terminate the lease."

Accordingly, the answer to the first prong of Wis. Stat. § 401.201(37)(b) is "yes"–the consideration that the debtor is to pay Flash to use the rolling stock is an obligation for the term of the lease that is not subject to termination by the debtor.

C.  **The Fact that the ELA Gives the Debtor the Option to Purchase the Goods for Nominal Consideration Upon Completion of the Agreement Meets the Second Prong of the Definition of a Security Interest.**

The Court now moves to the second prong of Wis. Stat. § 401.201(37)(b), and asks whether the transaction contains one of the four conditions listed in Wis. Stat. § 401.201(37)(b)(1)-(4). The Court concludes that the ELA contains the fourth condition–the one listed in Wis. Stat. § 401.201(37)(b)(4).

Wis. Stat. § 401.201(37)(b)(4) asks whether "[t]he lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement." Paragraph 13 of the ELA states that,

> On expiration of the Lease term, Lessee shall surrender the equipment leased under this Lease, in the same condition as when received, less reasonable wear and tear, and free from collision or upset damage, to the Lessor at any other location mutually agreed on by the parties to this
12

>Lease. Lessee may also purchase the leased equipment at the end of the lease term or upon making all payments due under the attached schedule for [$100.00].

(Debtor's Ex. A ¶ 13.)

The language of this paragraph constitutes the condition described in Wis. Stat. § 401.201(37)(b)(4)–and, incidentally, describes the specific purchase option that constituted a security interest under the predecessor version of the statute. By the ELA's terms, upon completion of the ELA, the debtor has the option to become the owner of the equipment for the additional consideration of $100.00. The equipment involved consists of multiple pieces of rolling stock appraised at a value of at least $129,500.[5] Therefore, the option to purchase that equipment for a total of $100 upon compliance with the provisions of the lease agreement constitutes an option to purchase for "nominal" additional consideration. Because the agreement provides that the debtor may purchase the equipment for nominal additional consideration upon compliance with the lease agreement, the ELA meets the condition described in Wis. Stat. § 401.201(37)(b)(4).

D.  **Other Provisions of the ELA, While Arguably Less Persuasive Under the Current Version of § 401.201(37) Than Under Its Predecessor, Nonetheless Support the Conclusion that the ELA is a Security Interest.**

Like the agreement at issue in <u>Michaels,</u> the ELA provides that the debtor bears

---

[5] Although Flash disputes the appraisal of the equipment obtained by the debtor, the debtor's appraisal is sufficient to demonstrate that the option to purchase the equipment for $100 at the end of the lease term is nominal additional consideration compared to the value of the items being purchased.

13

the bulk of the responsibility concerning the operation of the equipment and has the responsibility to perform all maintenance and repairs on the equipment. (Debtor's Ex. 1 ¶ 7.) Under the ELA, the debtor also bears the risk of damage or loss of the equipment under the agreement and agrees to indemnify the "lessor" from all claims, losses, causes of action and expenses associated with the equipment leased under the agreement. (Debtor's Ex. 1 ¶ 9.) In addition, the ELA requires the debtor to pay any fees, including vehicle registration and inspection fees, for the equipment, as well as any taxes that may be imposed with respect to the equipment. (Debtor's Ex. A ¶ 10.) In <u>Michaels</u>, similar facts suggested to Judge Shapiro that the debtor "acquired a property interest and that the document in question is a security agreement." <u>Michaels</u>, 156. B.R. at 593.

The statute before this Court, however, is different from the version Judge Shapiro considered in <u>Michaels</u> with respect to these issues. The current version of Wis. Stat. § 401.201(37) now contains a subsection (c). Subsection (c) states that a "transaction does *not* create a security interest *merely* because it provides any of the following." The statute then lists five conditions, including "[t]hat the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance . . . or service or maintenance costs with respect to the goods." Wis. Stat. § 401.201(37)(c)(2).

Clearly, then, if the only salient features of the ELA before this Court were the fact that it requires the debtor to pay fees and taxes on the equipment, or to insure the equipment, or to take the responsibility for maintaining the equipment, current Wis. Stat. § 401.201(37)(c)(2) would prohibit the Court from concluding that the ELA is a

14

security interest. But subsection (c)(2) of § 401.201(37) does not say that these factors are irrelevant to the analysis. Rather, it says only that these factors, in and of themselves, are not enough to turn a lease into a security agreement. The Court concludes that, in light of the fact that the two prongs of Wis. Stat. § 401.201(37)(b) clearly have been met, it is not barred by Wis. Stat. § 401.201(37)(c)(2) from considering as supporting evidence the fact that the ELA puts all of these burdens on the debtor. The Court concludes that the fact that the ELA–in addition to failing to provide the debtor with a means of terminating the contract and giving the debtor the option to purchase for nominal consideration upon compliance with the contract–makes the debtor responsible for taxes, for filing fees, for insurance and for maintenance, supports its conclusion that the ELA is, indeed, a security interest, and not a lease.

E. **The Fact that the ELA Is Incomplete and Ambiguous Requires that It Be Construed Against the Drafter, and Therefore that It Be Construed as a Security Interest.**

Finally, the Court finds the ELA, like the "Rental Agreement" in <u>Michaels</u>, to be incomplete and ambiguous, and therefore finds that it must be construed against its drafter, Flash.

It appears that the agreement involved in <u>Michaels</u> was, perhaps, a boilerplate agreement, and the parties had failed to fill in several of the relevant blanks. That is not the case with the ELA. Nonetheless, the ELA is missing certain relevant provisions and contains confusing language.

As noted above, the ELA refers several times to a "lease term," but never defines that term. In addition, it refers both to the "term of this lease" or "this Lease

term"–implying that the ELA itself has a specified term, and the term of a particular vehicle's lease–implying that each piece of rolling stock may be subject to a specified lease term.

In paragraph 5, the language regarding when the debtor is to pay the consideration for the use of the rolling stock is somewhat unclear. The second sentence of the paragraph states, "Lessee agrees that it will pay the rentals set forth in the attached Schedules in advance on the 1st day of each month during the term of the lease." What is the intent of the words "in advance?" Do those words modify the phrase "set forth in the attached Schedules," in which case the sentence means that the payment amounts will be set out in the Schedules *in advance* of something? Or do the words "in advance" modify the words that follow–"on the 1st day of each month"–meaning that the debtor must make the payments *in advance* of the first day of the month?

The language in the "termination" paragraph–paragraph 11–is somewhat confusing, as the Court noted at the hearing. The first sentence of that paragraph states, "The Lease of any vehicle terminates at the expiration of its Lease term, or at any other time after the first Twenty-Four (24) months of such Lease term, provided Lessee buys out the remainder of the Lease contract and is not in default under this Lease." There are three clauses in that sentence. The first clause states that the lease of a vehicle terminates at the expiration of its lease term (a seemingly unnecessary statement). The second clause states that, in the alternative, the lease terminates at any time after the first two years of the vehicle's lease term. The third clause provides

16

two conditions–the lessee must "buy[ ] out the remainder of the Lease contract" and cannot be "in default under this Lease." Because it contains conditions, the third clause must modify either one or both of the first two clauses. But that begs the question–does it modify the second clause only, or both the first *and* the second clause?

Logically, it appears that the third clause could modify only the second clause. In other words, it appears that the debtor is required to buy out the full amount of the lease (and avoid default) only if the debtor wants to terminate the lease sometime between the twenty-four-month mark and the lease expiration date. It would not make sense to require the debtor to buy out the full amount of the lease at the expiration of the lease term–the debtor already would have paid the full amount of the lease at that point. But the sentence is not clear, adding to the murkiness surrounding the contract's provisions.

These examples convince the Court that this contract, like the one Judge Shapiro reviewed in Michaels, is ambiguous and incomplete. And the law as Judge Shapiro observed it in 1993 remains applicable today–"[A]n ambiguous document shall be construed against its drafter." Michaels, 156 B.R. at 593. *See also*, In re Meyer, 331 B.R. 794, 797 (Bankr. E.D. Wis. 2005) (citations omitted); Converting/Biophile Laboratories, Inc. v. Ludlow Composites Corp., 296 Wis. 2d. 273, 291 (Wis. App. 2006) (citation omitted). The drafter in this case–Flash–urges the Court to construe the ELA as a lease. Accordingly, because it is ambiguous, the Court construes the ELA against Flash–as a security interest.

## IV. CONCLUSION

For all of the reasons discussed above, the Court concludes that the ELA is a disguised security agreement, not a true lease. Because the ELA is a security agreement, Flash is a secured creditor of the debtor. Because Flash is a secured creditor, the Code does not require the debtor to pay Flash according to the terms of the ELA, and instead allows the debtor to offer Flash adequate protection in an amount that would preserve Flash's interest in its collateral.

Two questions remain, which were not resolved at the hearing. Prior to filing its motion, the debtor obtained an appraisal of the rolling stock. That appraisal valued the equipment at $129,500. The debtor then proposed to make adequate protection payments based on that appraised value, with eight percent interest, amortized over seven years. Flash disagrees with the $129,500 appraisal the debtor obtained, and asked the Court for time to obtain its own appraisal. Because "[a] secured creditor retains the right to adequate protection of its collateral, which means it is entitled to have the value of its collateral maintained at all times . . . ." In re Bushee, 319 B.R. 542, 552 (Bankr. E.D. Tenn. 2004), the Court yet needs to determine whether the debtor's proposed adequate protection payments do, in fact, maintain the value of Flash's collateral. Until it sees the appraisal Flash obtained, and has an opportunity to hear argument from the parties in the event that the two appraised values differ widely, the Court cannot make that determination.

In addition, as discussed above, Flash argued at the hearing that the debtor owed additional money over and above any "lease" payments or adequate protection

18

payments, because of a $40,000 priority claim it holds as the result of a 2007 agreement with Flash. The Court did not hear argument on this issue, or make any ruling on the issue, at the hearing.

**WHEREFORE**, the Court hereby **PROVISIONALLY GRANTS** the debtor's motion for authorization to use the collateral in exchange for the proposed adequate protection payments. The Court hereby **ORDERS** the debtor to begin payments of adequate protection to Flash, in the amount of $2,018.41 per month, retroactive to December, 2007.

The Court **CONTINUES** the hearing on the offer of adequate protection to *January 23, 2008*, at which time the Court will revisit its provisional approval of the debtor's offer of adequate protection in the event that Flash provides the Court with a substantially different appraisal of the value of the equipment collateral at issue. In addition, at the hearing on January 23, 2008, the Court will review Flash's argument that it is owed additional money pursuant to a $40,000 priority claim referenced in a separate "Management Agreement." (Mem. In Opp. at 3, Ex. B.)

**SO ORDERED** this 10th day of January, 2008.

HON. PAMELA PEPPER
United States Bankruptcy Court